UNITED STATES TRUST COMPANY, TRUSTEE, APPELLEE, V. KATHERINE P. COWIN ET AL., APPELLEES:
UNITED STATES TRUST COMPANY, EXECUTOR, APPELLANT: MARIAN NOBLE COWIN, INTERVENER, APPELLANT.

FILED JUNE 19, 1931. No. 27729.

 

*Morsman & Maxwell, Fradenburg & Matthews* and *John R. Fike,* for appellants.

*Brogan, Ellick & Van Dusen, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

GOOD, J.

Plaintiff, as trustee, brings this action, seeking direction and guidance as to the proper disposition of a stock dividend, declared upon corporate stock constituting a part of the trust estate.

April 24, 1920, William B. Cowin conveyed in trust to plaintiff 350 shares of the capital stock of the Union Stock Yards Company. Other property, which it is unnecessary to consider, was included in the deed of trust. The trust deed contained this provision: "The income from said trust fund shall be paid to me during my life at such times as I may direct. Upon my death all of the principal and undistributed income from said trust fund shall be paid to my wife, Katherine P. Cowin unless she should predecease me, then in which event all of the principal and undistributed income shall be divided among my children then living unless the youngest child shall not have attained the age of twenty-one years in which event this trust shall continue for the benefit of said children until such child shall have attained the age of twenty-one years. Should any of my children die leaving lawful issue, I then direct that the share which would have gone to such deceased child be equally distributed among the lawful is-

sue of said deceased child." The trustee accepted and has since continued to act pursuant to the trust deed.

In June, 1922, Mr. Cowin and wife were divorced. At that time instruments were executed in which Mrs. Cowin assigned to their children nine-tenths of her beneficial interest in the trust property, and Mr. Cowin assigned to his then wife, as a part of the alimony, a certain proportion of the income of the trust estate which he had reserved to himself.

In October, 1927, the Union Stock Yards Company declared a stock dividend of 50 per cent. One hundred and seventy-five shares of stock, representing such dividend, were issued to the plaintiff trustee. Subsequent to the divorce above mentioned, Mr. Cowin contracted a second marriage, and in October, 1929, departed this life, testate. His former wife and second wife both survive him. His will was admitted to probate, and the United States Trust Company was appointed executor of his will. Katherine P. Cowin, the first wife, and the children of Mr. and Mrs. Cowin claim the whole of the 175 shares, representing the stock dividend, as a part of the corpus of the trust. The second wife, who elected to take under the statute, instead of under the provisions for her in the will, contends that the stock dividend represents income and belongs to the estate of Mr. Cowin. In this situation plaintiff instituted this action for its protection seeking to obtain a decree of court directing to whom it should pay or deliver the stock dividend. By a supplemental petition the plaintiff represents that it is about to be, or has been, merged with the United States National Bank, and asks that the bank be substituted as trustee for the United States Trust Company. The trial court entered a decree finding that the stock dividend of 175 shares passed, under the trust deed, to Katherine P. Cowin and her children, and provided for the substitution of the United States National Bank as trustee. The executor and widow of the second marriage have appealed.

A number of legal questions have been ably presented both in the briefs and on oral argument. The conclusion we have reached makes it necessary to consider but one, namely, the question of whether the stock dividend is income and should be paid to the estate, or a part of the corpus of the trust and should go to Katherine P. Cowin and her children.

The question is new in this jurisdiction. It has been a fruitful source of litigation in other courts. Their holdings are not harmonious. The courts of last resort in this country which have passed upon the question have taken three distinctly divergent views. They are generally referred to as the Massachusetts rule, the Kentucky rule, and the Pennsylvania rule.

Briefly speaking, the Massachusetts rule is that, where corporate stock is conveyed in trust, reserving to the settlor the income of the trust estate for his life, a stock dividend, declared during his life, is not income but a part of the corpus of the trust. The Kentucky rule is that a stock dividend, declared during the existence of the trust, is income and belongs to the life tenant or settlor, regardless of whether the stock dividend was declared from earnings accumulated before or after the creation of the trust, or partly before and partly thereafter. The Pennsylvania rule, under such circumstances, apportions the stock dividend, holding that so much of the stock dividend as represents earnings of the corporation prior to the creation of the trust is a part of the corpus of the trust, and that such part of the stock dividend as represents earnings, made subsequent to the creation of the trust, is income and belongs to the settlor or life tenant.

Plausible arguments have been adduced in support of each of these rules. Practically all of the courts, regardless of which rule obtains, hold that the intention of the settlor, if sufficiently specific and violative of no statute or rule of public policy, shall guide the courts in the determination of the question. A similar rule has been many

times applied by this court in the construction of wills. *Stone v. Stine,* 105 Neb. 33; *Herter v. Herter,* 97 Neb. 260; *Worley v. Wimberly,* 99 Neb. 20; *Heywood v. Heywood,* 92 Neb. 72. In the instant case the settlor has not evinced by the language used any specific direction with regard to a stock dividend. It may be inferred, from the fact that the stock dividend was declared two years previous to his death, that Mr. Cowin knew of it and consented that it should remain as a part of the trust estate. However, we do not base our conclusion upon that circumstance.

In *Hite's Devisees v. Hite's Executor,* 93 Ky. 257, where that court had the question under consideration, it was said (p. 265): "It is the rule as settled by the current of authority that dividends, whether of stock or payable in money, are nonapportionable, and must be considered as accruing in their entirety as of the date when they are declared. If, for instance, the life tenancy has begun when a cash dividend is declared, it belongs to the life tenant, although it may result in part from profits previously earned. It goes to him irrespective of the time when it was earned. No inquiry will in such case be made as to what portion of the profits upon which the dividend was based was earned before or after the death of the testator for the purpose of apportioning it between the tenant for life and the remainderman." The reason given for the rule so announced is stated as follows: "The difficulty attending such an inquiry, the impossibility of attaining accuracy, and of ascertaining the many sources from which the profit has been derived, are the reasons for this rule." It may be observed that the Kentucky rule has not been generally accepted and followed by other jurisdictions.

The Pennsylvania rule appears to have been first specifically announced in *Earp's Appeal,* 28 Pa. St. 368, decided in 1857. That rule has been followed in a number of jurisdictions, but has been severely criticised, and we

think the more recent trend of authority is in favor of the Massachusetts rule. The Ohio supreme court, in the case of *Lamb v. Lehmann,* 110 Ohio St. 59, after reviewing the reasons supporting the various rules, announced its adherence to the Massachusetts rule. Commenting upon this decision in 34 Yale Law Journal, 195, it is said (p. 196):

"The apportionment rule (meaning the Pennsylvania rule) is unfortunately blessed with an implication of fairness. What could be fairer than to give the life tenant the earnings over and above the unimpaired corpus of the trust? But observation of the actual application of the rule raises some doubt as to its inherent fairness. In applying the apportionment rule the courts must preserve the value of the corpus unimpaired. Having rejected a vote of the board of directors as binding in these cases, and launching an independent inquiry, the courts apparently turn about, and, in their search for the value of the corpus, accept valuations as determined by the 'treasurer and vice-president,' or fixed in part by a vote of the stockholders. The first cases figured the value of the corpus from the market value of the shares on the day of testator's death. It was soon seen that this measure of value was inadequate, and the test in later Pennsylvania cases seems to be 'actual value.' In New York we find the courts making findings of 'intrinsic value' from the books, records, and reports of the corporation. In a very recent case the court made its findings on the basis of a report of capital and earnings furnished by the executor. Through all of the decisions one is conscious of faulty methods of valuation. To ascertain the value of the corpus the courts must order an independent and complete inventory of assets as of the time of the testator's death. In cases where the courts must find value of the assets of one of our modern industrial giants, the cost is so great as to render the rule of apportionment impracticable." In the comment it is further said: "The de-

cisions, therefore, have been based upon an approximation of 'value.' They represent, not apportionment, but a more or less arbitrary allotment of stock dividends a part to the life tenant, and at times a part to the remainderman. * * *

"Out of sympathy for the life tenant the apportionment rule might be condoned were it not for certain other legal consequences which seem to have been entirely overlooked. Valuable legal relations attach to the ownership of stock, and those legal relations have a value which is a part of the value of the corpus. This seems to have been recognized to some extent even in the apportionment states, since there, 'rights' to subscribe to additional stock of the corporation go to the remainderman. And even though these 'rights' have a 'value,' no inquiry is made as to whether that is a value resulting from earnings over and above the value of the corpus. * * *

"The fairness of the apportionment rule is only theoretical and elusory. Its application is dangerously variable, and it is really unfair to the remainderman. The supreme court of Ohio has chosen wisely in its adoption of the Massachusetts rule. The advantage of simplicity is obvious."

It seems to us that the inherent fallacy of the Pennsylvania rule is that it regards the corpus of the trust as of its value at the time the trust was created, while the fact is, where the trust property consists of corporate stock, the stock, itself, is the corpus, and it may rise or fall in value. Still, the corporate stock is the corpus or principal. If corporate stock, held in trust, greatly increases in value for a time, and a stock dividend is declared and goes to the life tenant, and thereafter the stock falls in value until it is worth much less than when the trust was created, by what process can the value of the corpus be maintained? We know of no means by which it can be maintained. If real estate is conveyed in trust the corpus is the realty. It may rise or fall in value as the market

goes up or down; so corporate stock, placed in trust, remains the corpus or principal of the trust; its value may rise or fall with the market; but because its value rises with the market it should not be reduced by declaring a stock dividend and thereby dividing the corpus.

One of the best expositions of the Massachusetts rule may be found in *Gibbons v. Mahon*, 136 U. S. 549, wherein it is said (p. 557) : "The distinction between the title of a corporation, and the interest of its members or stockholders, in the property of the corporation, is familiar and well settled. The ownership of that property is in the corporation, and not in the holders of shares of its stock. The interest of each stockholder consists in the right to a proportionate part of the profits whenever dividends are declared by the corporation, during its existence under its charter, and to a like proportion of the property remaining, upon the termination or dissolution of the corporation, after payment of its debt. (Citing a number of cases.)

"Money earned by a corporation remains the property of the corporation, and does not become the property of the stockholders, unless and until it is distributed among them by the corporation. The corporation may treat it and deal with it either as profits of its business, or as an addition to its capital. Acting in good faith and for the best interests of all concerned, the corporation may distribute its earnings at once to the stockholders as income; or it may reserve part of the earnings of a prosperous year to make up for a possible lack of profits in future years; or it may retain portions of its earnings and allow them to accumulate, and then invest them in its own works and plant, so as to secure and increase the permanent value of its property.

"Which of these courses shall be pursued is to be determined by the directors, with due regard to the condition of the company's property and affairs as a whole; and, unless in case of fraud or bad faith on their part,

their discretion in this respect cannot be controlled by the courts, even at the suit of owners of preferred stock, entitled by express agreement with the corporation to dividends at a certain yearly rate, 'in preference to the payment of any dividend on the common stock, but dependent on the profits of each particular year, as declared by the board of directors.' * * *.

"Reserved and accumulated earnings, so long as they are held and invested by the corporation, being part of its corporate property, it follows that the interest therein, represented by each share, is capital, and not income, of that share, as between the tenant for life and the remainderman, legal or equitable, thereof. * * *

"In ascertaining the rights of such persons, the intention of the testator, so far as manifested by him, must of course control; but when he has given no special direction upon the question as to what shall be considered principal and what income, he must be presumed to have had in view the lawful power of the corporation over the use and apportionment of its earnings, and to have intended that the determination of that question should depend upon the regular action of the corporation with regard to all its shares.

"Therefore, when a distribution of earnings is made by a corporation among its stockholders, the question whether such distribution is an apportionment of additional stock representing capital, or a division of profits and income, depends upon the substance and intent of the action of the corporation, as manifested by its vote or resolution; and ordinarily a dividend declared in stock is to be deemed capital, and a dividend in money is to be deemed income, of each share.

"A stock dividend really takes nothing from the property of the corporation, and adds nothing to the interests of the shareholders. Its property is not diminished, and their interests are not increased. After such a dividend, as before, the corporation has the title in all the corporate

property; the aggregate interests therein of all the shareholders are represented by the whole number of shares; and the proportional interest of each shareholder remains the same. The only change is in the evidence which represents that interest, the new shares and the original shares together representing the same proportional interest that the original shares represented before the issue of new ones."

The rule was perhaps first clearly announced in *Minot v. Paine*, 99 Mass. 101. It is now followed by the courts of Connecticut, Georgia, Illinois, Maine, New York (by statute), North Carolina, Ohio, Virginia, West Virginia, and, to some extent, has been followed in Rhode Island.

In the case of *Hayes v. St. Louis Union Trust Co.*, 317 Mo. 1028, decided in 1927, there is a full and thorough review of all of the cases. In that case it is held: "If the trust estate consists of corporate stock, the principal or corpus of the estate consists of the corporate stock itself, and not its value at any given time; and if the corporate stock so held in trust increases in value through the accumulation of corporate earnings after the beginning of the trust, and if no dividends are declared, the whole increase belongs to the corpus, even upon a sale of the stock. * * *

"The earnings and profits of a corporation remain the property of the corporation until severed from corporate assets and distributed as dividends. They may be transferred to the corporation's fixed capital and a stock dividend declared, but if thereby the enlargement of the capital stock exceeds the limit of the corporation's authorized capitalization the laws of this state require that the consent of the stockholders to the stock dividend be obtained.

"The outstanding shares of stock are simply units of interest in the corporation, as conducted by its directors, officers and (in some matters) shareholders. The aggregate stockholdings of a shareholder represent his fractional interest in the corporation, and not a mere investment

of money. The law gives a shareholder the right to subscribe for new stock issued, the reason being that he is entitled to maintain his proportionate interest in the corporation, and the rule applies where the stock is issued as a stock dividend offsetting net profits previously earned and therefore represented by the original stock at its enhanced value.

"A stock dividend is in no true sense dividend. A dividend implies a division, a severance from the corporate assets to the amount of the dividend, and a distribution thereof among the stockholders. A stock dividend is the increasing of the fixed capital of the corporation; it takes nothing from the corporation; it gives nothing to the shareholder; the title to all corporate property remains in the corporation as before, and the proportional interest of the stockholder continues the same."

If the reader is interested in pursuing this subject further, a full discussion of all the cases may be found in the annotations to the following cases: *In re Estate of Gartenlaub,* 185 Cal. 375, 24 A. L. R. 1, annotations, p. 9; *Lamb v. Lehmann, supra,* reported in 42 A. L. R. 437, annotations, p. 448; *Old Colony Trust Co. v. Jameson,* 256 Mass. 179, 50 A. L. R. 372, annotations, p. 375; and *Hayes v. St. Louis Union Trust Co., supra,* reported in 56 A. L. R. 1276, annotations, p. 1287.

In our view, the Massachusetts rule is the more logical and based on the better reason. We therefore adopt that rule, and hold that where corporate stock is placed in trust, reserving the income therefrom to the settlor, a stock dividend, declared during the existence of the trust, is not income, but is a part of the corpus of the trust and goes to the beneficiary of the trust.

It follows that the judgment of the district court is right, and it is therefore

AFFIRMED.