RHODE ISLAND HOSPITAL TRUST CO. *et al. vs.* JOHN H. TUCKER *et al.*

JULY 1, 1931.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

RATHBUN, J.   This is a bill for instructions brought in the Superior Court by trustees under the will of Annie E. Tucker.   The cause being ready for hearing for final decree was certified to this court for determination as provided by Section 35, Chapter 339, General Laws, 1923.

The testatrix deceased July 28, 1928, leaving a will by the codicil of which she gave her residuary estate to the complainants in trust to pay the net income therefrom to her husband, John H. Tucker, during his life, and, upon his death, to her son, John H. Tucker, Jr., and her daughter

Katherine, and to the survivor until his or her death. The will directs the trustee to transfer on the death of said survivor the trust estate, free from the trust, to the testatrix's grandchildren. All persons *sui juris* except those against whom decrees *pro confesso* were taken were represented by counsel and the Superior Court appointed a guardian *ad litem* to represent respondents who were minors or persons unascertained or not in being.

The trust estate, as received by the trustees from the executor, and as now constituted, consists of shares of stock in ten different corporations. Each of said corporations has issued to the trustees either stock dividends, so-called, rights to subscribe to new shares of the stock of the issuing corporation, or rights to subscribe for a debenture or bond convertible into stock of such corporation. Two of said corporations pay no cash dividends but distribute to stockholders at regular intervals shares of stock issued against their capitalized surplus. Some of said corporations pay regular cash dividends and also distribute at regular intervals stock issued against capitalized surplus of the issuing corporation. In each instance, except one, the stock, or right to subscribe, was issued against surplus earned after the creation of the trust. In other words, the corporations, instead of paying a cash dividend out of current earnings, capitalized a portion of said earnings and issued shares of stock to the stockholders.

The question is whether shares of stock, or the right to subscribe therefor, issued against surplus earned during the continuation of the trust is income, to be delivered to the life tenants, or *corpus* to be retained for the ultimate benefit of the remaindermen.

This is the first time that this question, which has given rise to so many different rules with varying modifications and so much conflict of authority, has been presented to this court.

The English rule is that regular dividends whether in cash or stock belong to the life tenant, and extraordinary divi-

dends whether in cash, stock or property belong to the remainderman. *Bouch* v. *Sproule*, L. R. 12 App. Cas. 385.

The Pennsylvania rule is that all dividends whether cash or stock earned before the creation of the trust are capital and belong to the remainderman; that all dividends of either class earned during the continuation of the life estate are income and belong to the life tenant; and that dividends of either class earned partly before and partly after the creation of the trust will be apportioned. Earp's Appeal, 28 Pa. 368; · *In re Smith's Estate*, 140 Pa. St. 344.

The Massachusetts rule is that all cash dividends, whether ordinary or extraordinary, are income, and all stock dividends, so-called, are capital without regard to the time when the same were earned. *Minot* v. *Paine*, 99 Mass. 101.

The English rule we cannot approve.

The Pennsylvania rule, as applied to stock˙ dividends, so-called, is admitted by some courts which have adopted the same to be lacking in logic. *Ballantine* v. *Young*, 79 N. J. Eq. 70.

It is our opinion that courts which apply this rule to so-called stock dividends attempt to divide corporate earnings according to their ideas of justice between the life tenant and the remainderman in disregard of well established legal principles and in violation of the language of the will.

The Pennsylvania rule, as applied to so-called stock dividends, is based upon the theory that the life tenant is entitled to all income of the corporation after the creation of the trust. It can hardly be called a sound theory which results in giving all profits to one class of beneficiaries and visits all losses upon another. See *Parker* v. *Mason*, 8 R. I. 427.

The Massachusetts rule, so far as so-called stock dividends are concerned, appears to be logical, to be founded on correct legal principles and to be a rule by which justice may be done between the life tenant and the remainderman. However, it may be pertinent to say that we cannot follow the Massachusetts rule in its application to extraordinary cash dividends the payment of which impairs the surplus

accumulated before the creation of the trust. See *R. I. Hospital Trust Co.* v. *Peckham*, 42 R. I. 365.

The Massachusetts rule, as applied to so-called stock dividends, although probably not approved by a majority of courts is followed in many jurisdictions, including the United States Supreme Court. See *Gibbons* v. *Mahon*, 136 U. S. 549; *Towne* v. *Eisner*, 245 U. S. 418; *Eisner* v. *Macomber*, 252 U. S. 189; *Hayes* v. *St. Louis Tr. Co.*, 317 Mo. 1028; *Lamb* v. *Lehman*, 110 Ohio St. 59, 42 A. L. A. 437; *Green* v. *Bissell*, 79 Conn. 547; *Humphrey* v. *Lang*, 169 N. C. 601; *Security Trust Co.* v. *Rammelburg*, 82 W. Va. 701.

The same principle applies to rights to subscribe for stock and to rights to subscribe for debentures and bonds convertible into stock of the issuing company. In each instance a portion of corporate surplus has been permanently capitalized. See *Greene* v. *Smith*, 17 R. I. 28; *Brown & Larned Pet.*, 14 R. I. 371.

In considering the question before us it is not our province to determine what is in our opinion fair between one class of beneficiaries and another or to speculate as to whether the testatrix entertained some unexpressed intention opposed to the plain and ordinary meaning of the language she employed. We are called upon to construe her will; and, in so doing, it is our duty to give effect to her intention as expressed by the language used therein.

Testimony in behalf of the life tenants was introduced, over objection, tending to show from purported statements of the testatrix that she intended that stock dividends, so-called, issued by one corporation which paid no cash dividends, be considered income, and showing that after her holdings in this corporation had accumulated to 100 shares she sold all shares of stock in said corporation issued to her thereafter. Such testimony tended to contradict or supplement the express terms of the will, and was inadmissible. *R. I. Hos. Tr. Co.* v. *Bradley*, 41 R. I. 174.

The testatrix uses the word "income". Had she desired to give to the life tenants something in addition to income,

as that word is ordinarily understood, she could have expressed her wishes in detail. She must be presumed to have been familiar with the ordinary use and meaning of the word "income" and to have known that a stockholder is not entitled to receive any part of the earnings of a corporation until its directors, acting in good faith, declare a dividend; and that the directors, acting in good faith, may retain a portion or all of the earnings and thereby accumulate a surplus to be invested and used in enlarging or expanding the corporate business.

Although such surplus may be distributed to the stockholders at any time before it is carried to the permanent capital account, such surplus is *corpus* before, as well as after, the declaration of a so-called stock dividend against the same, thereby placing the portion of surplus represented by the new shares beyond the power of the directors to distribute to stockholders. Before new shares were issued it was within the power of the directors to change the surplus from capital to income by declaring a cash dividend out of the same. They did not do so but retained the surplus, as they, acting in good faith, had the right to do to be held as permanent capital. The surplus represented by the stock issued against it was always capital and could not become income after the directors placed it beyond their power to distribute the same as income to the stockholders. If the surplus represented by the new shares is capital it follows that the shares are capital also. "A stock dividend really takes nothing from the property of the corporation, and adds nothing to the interests of the shareholders. Its property is not diminished, and their interests are not increased. After such a dividend, as before, the corporation has the title in all the corporate property; the aggregate interests therein of all the shareholders are represented by the whole number of shares; and the proportional interest of each shareholder remains the same. The only change is in the evidence which represents that interest, the new shares and the original shares together representing the same proportional interest that the original shares represented

before the issue of new ones." *Gibbons* v. *Mahon*, 136 U. S. 549 at 559.

It has been frequently pointed out that the term "stock dividend" is a misnomer and a self-contradiction. Stock represents capital and there can be no dividend until a portion of the surplus is separated from capital and distributed to the stockholders. *Brown* v. *Larned, supra*. The legal concept of income implies a severance from capital.

It may be suggested that the rights of a life tenant and a remainderman should not depend upon a decision dictated by the policy of the directors. In the absence of proof, or even a suggestion to the contrary, we must assume that the directors are acting in good faith in performing their duties; and we cannot change the provisions of the will to conform to our ideas of justice between life tenants and remaindermen.

Our attention has been directed to certain language in *R. I. Hos. Tr. Co.* v. *Peckham, supra*, to the effect that the same rule applies to so-called stock dividends as to cash dividends. That question was not before the court in the *Peckham* case. The question was as to the application of an extraordinary cash dividend out of surplus accumulated before the death of the testator. The language referred to is *dicta*.

Our determination is that all shares of stock, rights to subscribe for such shares and rights to subscribe for debentures and bonds, convertible into stock of the issuing corporation, issued to the trustees by corporations declaring the same are capital to be held for the ultimate benefit of the remaindermen; and the complainants are advised accordingly.

The parties may present a form of decree in accordance with this opinion on July 6, 1931.

*Tillinghast & Collins, James C. Collins, Colin MacR. Makepeace*, for complainants.

*Comstock & Canning, William A. Graham*, for John H. Tucker *et al.*

*Thomas F. Black, Jr.*, for Henry E. Wilson, Jr., and as guardian *ad litem*.