Hillsborough,
No. 4447.

RALPH E. LANGDELL, *Adm'r v.* ORIEN B. DODGE, *Adm'r.*

Argued February 7, 1956.

Decided March 6, 1956.

*Wyman, Starr, Booth, Wadleigh & Langdell (Mr. Langdell orally), for the plaintiff.*

*Eaton & Eaton (Mr. Robert I. Eaton orally), for the defendant.*

BLANDIN, J. The first question we shall consider is whether the testator intended to give to the remaindermen all income received by the life tenant and unexpended by her at the time of her death or whether it became hers absolutely so that it goes to her heirs. This is not a case where the testator's intent is plain from the language used (*cf. McAllister v. Hayes*, 76 N. H. 108, 111), but is one in which that intent must be determined by a balance of probabilities. *Romprey v. Brothers*, 95 N. H. 258, 260; *Colony v. Colony*, 97 N. H. 386, 391. In so doing it seems that certain salient facts appear. The first is that the testator apparently considered income and principal separately, rather than treating his estate as a unit, as was the situation in *Kimball v. Bible Society*, 65 N. H. 139. In giving to his wife the remainder of his estate to use the income for life and the principal if necessary, he made a direct gift to her of the income. *Ruel v. Hardy*, 90 N. H. 240, 242. Her comfort and happiness and not the unity of his estate, which was to be split up eventually among four nieces and nephews, seems to have been the testator's first concern. If, as was said in *Kimball v. Bible Society, supra,* 151, relied upon by the plaintiff, "slight evidence may be enough to prove an intention" that unexpended income shall become a part of the principal and unity of the estate be preserved, no reason appears why the converse should not be true. Here such evidence as there is points to a separation of income and principal. The wife was not directed to use the estate as a unit as was the situation in the *Kimball* case, *supra,* 140, where she was bequeathed "all my personal and real estate during her natural life, to be used and managed by her as she shall see fit." Rather, she was to enjoy the income separately and then use the principal if necessary.

Another factor which indicates the testator sought to separate income and principal is that we believe it unlikely he would desire to burden his wife with the matter of accounting for income. Problems of this nature might have been so vexing and worrisome as to have militated against her enjoyment of the property. It is to be presumed that the testator intended to make a practical disposition of his estate so that his wife could manage it with a

minimum of trouble and did not intend to create a situation which would cause her worry and harassment. *Cowan* v. *Cowan,* 90 N. H. 198, 201.

It is also significant that he left "the rest, residue and remainder" of his estate to his wife "to use and enjoy the income thereof" for life, with authority to invade the principal under certain conditions, and on her decease he gave "whatever portion may be remaining of *said residue,*" (emphasis supplied) to his nieces and nephews. This is unlike the language used in *McPhee* v. *Colburn,* 98 N. H. 406, relied upon by the plaintiff, where the income of the residue was bequeathed to the testator's wife for life, together with the right to use the principal for certain purposes, but "what remains of my property" at the wife's death was given to the testator's two children. In the case before us the "residue" was treated as separate and distinct from the "income thereof." The word "residue" in the first instance referred to the principal amount of the estate remaining, the use and enjoyment of the income from which was bequeathed to the wife for life. So also, we believe that the subsequent use of the words "said residue" in disposing of the remainder at the wife's death meant the same and referred to the principal amount then remaining. *Fowler* v. *Whelan,* 83 N. H. 453, 457.

In *Martin* v. *Eaton,* 57 N. H. 154, on facts similar to those now before us, a unanimous court in separate opinions held that all income savings and accumulations unexpended by the widow during her lifetime went to her heirs upon her death. Interpreting the instrument in the light of all the circumstances, our conclusion in answer to the first question is that the will does not give the income unexpended at the widow's death to the remaindermen but that it became a part of the widow's estate.

The next question is whether we shall follow the law established by *Holbrook* v. *Holbrook,* 74 N. H. 201, which requires an investigation of the facts to determine whether the stock dividends declared after the death of the testator and during the life of his wife should be treated as principal or income, or whether we should adopt the majority or so-called Massachusetts rule that they shall be considered as principal. At the time the *Holbrook* opinion was handed down some fifty years ago, it was conceded that many jurisdictions took a contrary view. Since then, decisions and reasons have multiplied against the *Holbrook* holding, so it is now clear that the weight of authority supports the Massachusetts rule,

as set forth in *Minot* v. *Paine*, 99 Mass. 101. See also, Restatement, Trusts, *s*. 236, 1948 Supp.; Note, 44 A. L. R. (2d) 1277. Pennsylvania, for example, which once had a rule similar to ours as to the apportionment of stock dividends between the life tenant and the remaindermen, has now followed Massachusetts through the enactment of a statute. Pa. Laws 1945, No. 171; Laws 1947, No. 516 (20 Penna. Stat. Anno. *ss*. 3470.1-3470.13). New York also, where vast numbers of trusts have been and are administered, after trying several formulas including that of the *Holbrook* case, enacted a statute conforming in essentials to the Massachusetts principle. The reasons for the change are well stated in an opinion which refers to *Matter of Osborne*, 209 N. Y. 450, where the court states, as an example of the problems which arise when an attempt is made to follow the rationale of the *Holbrook* decision, "the rule of the *Osborne* case was supposed to be simple and just; it proved to be confusing and at times unjust . . . The Legislature gave us the much needed relief by enacting chapter 843 of the Laws of 1926 . . . whereby all stock dividends were declared to be principal, not income." *Matter of Hagen*, 262 N. Y. 301, 305.

A great disadvantage of the *Holbrook* rule is that it presents accounting problems perplexing and costly for the life tenant to solve. As an example, in this case she would have had to make an examination of the corporation books to determine the value of the stocks at the beginning of her life tenancy and then she would have had to discover the true earnings of the corporation. Next, she would have had to decide what portion of the stock dividends represented earnings accrued prior to her life tenancy, and what portion represented the natural growth and increase in the value of the plants and businesses of the corporations. Obviously, not only a knowledge of accounting but an understanding of the history and prospects of the concerns would have been essential. Since the books, while of evidentiary value, would not be conclusive, there could be no guarantee had she done all this, that adverse interests might not have differed with the conclusions drawn by her or her accountants and law suits resulted.

Logically, too, stock dividends appear properly to be principal. As was said by the United States Supreme Court in *Gibbons* v. *Mahon*, 136 U. S. 549, 559, 560, "A stock dividend really takes nothing from the property of the corporation, and adds nothing to the interests of the shareholders. Its property is not diminished, and their interests are not increased. After such a dividend, as

before, the corporation has the title in all the corporate property; the aggregate interests therein of all the shareholders are represented by the whole number of shares; and the proportional interest of each shareholder remains the same." The United States Government has recognized the soundness and practicality of the Massachusetts rule by enacting a law that for income tax purposes stock dividends are not income but principal. 26 U. S. C. A., s. 305 (1954). To the same effect, see Uniform Principal and Income Act, s. 5, 9A U. L. A. 233.

We are aware of the force of the defendant's argument of *stare decisis* but here we believe it must yield to logic and an experience which has shown the impracticality and even on occasion the insuperable difficulty of attempting to apply accurately the *Holbrook* rule. It is general practice for stockholders to treat stock dividends as principal and we believe this testator intended the disposition of his estate to be in accord with this practice. *Minot* v. *Paine*, 99 Mass. 101, 112.

The *Holbrook* case is hereby overruled. We think this need occasion no disruption of the settlement of estates. Even as far back as that decision, and since, stock dividends, in the absence of other evidence, have been presumed to be principal. *Rockwell* v. *Dow*, 85 N. H. 58, 69. We expect most representatives of estates have acted in accordance with this presumption but those who have not need experience no difficulty since this opinion will not be retroactive to affect prior reliance on the *Holbrook* rule.

In conclusion, it appears the estate of Sadie M. Towne is entitled to such income from the testator's estate as was unexpended by her at the time of her death, but the defendant should be ordered to turn over to the plaintiff the securities representing the stock dividends declared since the testator's death, and to account to him for the income received from them since the decease of Mrs. Towne. The results reached make unnecessary consideration of other questions and the order is

*Remanded.*

All concurred.

ON REHEARING. After the foregoing opinion was filed, the defendant's motion for rehearing was granted.

*Eaton & Eaton* (*Mr. Robert I. Eaton* orally), for the motion.

*Wyman, Starr, Booth, Wadleigh & Langdell* and *Charles J. Dunn* (*Mr. Dunn* orally), opposed.

BLANDIN, J. The motion for rehearing alleges that all of the securities received by the life tenant as stock dividends, excepting those of a single corporation, were transferred during the life tenant's lifetime, but at the defendant's request, to his name as guardian of the life tenant, in reliance upon the advice of counsel based upon *Holbrook* v. *Holbrook*, 74 N. H. 201, and upon the understanding that the dividends represented earnings accrued to the corporations during the life tenancy. The defendant accordingly argues that unless the order of this court is modified it will be retroactive so as to affect these transfers, contrary to the statement made in the opinion.

Without presuming to pass upon the allegations of fact, but taking them as true for purposes of the motion, we conclude that the transactions alleged were not such as to call for modification of the order. The rights of the life tenant in the dividends vested if at all before the securities were placed in the guardian's name. Her rights were no greater before the transfer than after, and no agreements between the guardian and the companies, to which the plaintiff was not a party could bind the plaintiff. No claim is made that he was notified of the transfers when they were made. His rights were unaffected by what was done. It follows that the transfers made in reliance on the rule in the *Holbrook* case did not change in any way the respective interests of the parties. Consequently if the facts were found to be as alleged, no change in the order would be warranted.

*Former result affirmed.*

All concurred.
April 27, 1956.