**Lelia Maud Arnold POHLMAN, Robin Ellen Cone, etc., et al., Appellants,**

v.

**The OWENSBORO NATIONAL BANK, Trustee under the Will of James Ernest Arnold, Deceased, etc., et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 28, 1969.

Jack A. Connor, Green & Connor, Owensboro, for appellants.

Guardian Ad Litem for Robin Ellen Cone and William Cameron Cone, Infants: Thomas A. Carroll, Owensboro.

Ridley M. Sandidge, Sandidge, Holbrook, Craig & Hager, John B. Anderson, Owensboro, for appellees.

REED, Judge.

Under the case law existing in this jurisdiction until the decision in Bowles v. Stille's Ex'r et al., Ky., 267 S.W.2d 707, 44 A.L.R.2d 1273, rendered April 23, 1954, corporate stock dividends declared after the death of a testator who had bequeathed the original corporate stock in trust were considered as income, distributable to the life tenant or beneficiary of the trust entitled to the receipt of income. By statute [KRS 386.020(4)] effective June, 1950, it was provided that stock dividends payable at a rate of 10% or more of the corporation's outstanding shares of the same class

were to be deemed corpus of such a trust and not distributable as income. This statutory provision was superseded by the enactment in this jurisdiction of the Uniform Principal and Income Act in 1956 which requires that all stock dividends payable in the stock of the declaring corporation must be treated as corpus and not income for purposes of the administration of a trust, and this is the present state of the applicable law. KRS 386.230.

The Bowles case neither mentioned nor considered the statutory provision [KRS 386.020(4)] applicable at the time of that decision, but the opinion overruled all prior case law to the contrary and held that stock dividends declared on corporate stock held in the corpus of a trust must be considered and treated as corpus and not income.

James Arnold died testate in October of 1936. The Owensboro National Bank qualified as executor and trustee under his will. This will left the bulk of the testator's estate in trust with directions to the trustee to pay the income to his wife, Maud Arnold, for her use and benefit during her lifetime. Upon her death, the trust was not to terminate but the trustee was directed to pay the entire net income to the testator's son for his lifetime; upon the death of testator's son, the trustee was then directed to pay over the income to the testator's grandchild or children for the term of their lives and upon their deaths the trust was to terminate and the corpus and any undistributed income were to be finally paid over to the testator's great-grandchildren. The testator's son, the second life tenant, predeceased the testator's widow but left surviving him one child, Lelia Arnold Pohlman, the only grandchild of the original testator, and Mrs. Pohlman is the sole third life tenant under the terms of the trust. Mrs. Pohlman has three children who as great-grandchildren of the original testator or their estates will be entitled to the distribution of corpus and any undistributed income upon the death of their mother. None of the parties to the dispute argue that the testamentary trust involved violates the rule against perpetuities or contains an unreasonable restraint against alienation.

The original life tenant, the testator's widow, lived until January, 1968. For a period of 32 years she received the entire net income of the trust. Part of the trust assets were 316 shares of the common stock of S. W. Anderson Co., Inc. In January, 1950, this corporation declared a stock dividend of 100%. In March, 1950, the trustee bank received from the corporation 316 shares of common stock representing the declared stock dividend. A few days thereafter the trustee delivered these shares representing the stock dividend to the testator's widow as beneficiary of the trust entitled to the entire net income. The widow acknowledged receipt of these shares and in the document evidencing receipt recited that the transaction was effected in reliance on the decisions of the Court of Appeals of Kentucky. The widow retained these shares and treated them as her own property. She received all income which they produced. She sold only 16 of the shares and retained the balance in her possession. Upon her death a dispute arose concerning the proper distribution of the 300 shares of stock. The beneficiaries of the trust created by the will of Mr. Arnold insist that the Bowles decision should be given retroactive effect.

Mrs. Arnold, the life tenant and widow of the original testator, left a will disposing of her property to persons other than those named as beneficiaries of the trust in Mr. Arnold's will. The trustee bank and the legatees of the will of Mrs. Arnold argue that the distribution of the stock dividend was valid when made under the law existing at the time of the transaction and that subsequent changes in the law should not relate back to invalidate the completed transaction.

■ The trustee bank instituted a declaratory judgment action in which all proper parties were properly brought be-

fore the court. The trial court adjudged that the Bowles decision should not be afforded retroactive effect in the situation here presented. The beneficiaries of the trust created by the will of Mr. Arnold appeal. The effect of the circuit court decision is to regard the corporate shares in controversy as the property of Mrs. Arnold, the settlor's widow, which should pass to the legatees named in her will. We hold that the decision of the trial court was correct.

The general problem of whether an overruling decision should be given retroactive effect or should operate only prospectively is an ancient one. No satisfactory all-inclusive pat rule has ever been formulated. The traditional view represented by the so-called general rule is that by overruling a prior decision the court does not pretend to make a new law but to vindicate the old one from misrepresentation. Accordingly, the new and correct rule announced in the overruling case would naturally apply to all questions subsequently coming before the court regardless of the chronology of the factual events from which the legal rights and liabilities at issue arose. This view is founded on the notion that a court is merely a discoverer rather than a maker of the law, and that a court's earlier decisions are merely evidences of the law and are not the law itself. Such notion still finds expression in many decisions.

In other decisions, however, some courts, including this one, have taken a more modern view—based upon Austinian rather than Blackstonian theory; they have treated the notion upon which traditional view is based as a myth which should be rejected, and have decided that an overruled case is not to be treated as if it never was the law. See a well-considered treatment of the problem in an annotation in 10 A.L.R. 3d pp. 1371–1447.

We need not explore the intricacies of the problem in areas other than the one presented by this case. We are not dealing with a problem of constitutional rights nor the judicial construction of a statute nor changing a rule of liability in tort law. We are dealing with a relatively narrow issue of the extent of retroactivity of an overruling decision that decides whether an asset is to be regarded as corpus of a trust and retained for distribution to ultimate beneficiaries at the termination of the trust relationship or is to be regarded as income from the trust itself to be distributed to the beneficiary entitled to income from the trust.

■ Fiduciaries, in general, and testamentary trustees, in particular, are held to strict standards of conduct. In the proper administration of a trust, the trustee must pay over to the beneficiary entitled promptly and in accord with existing law at the time of the transaction. Beneficiaries of trusts have free right to dispose of trust assets properly distributed to them as income. Appellants would have us make an ad hoc decision in each instance concerning whether the retroactive application of an overruling decision operating on a distribution valid at the time but thereafter made a breach of trust would cause undue hardship when viewed in the light of the subsequent conduct of the beneficiary after receipt of the distribution. It could well be argued that the same determination should include a decision on whether the beneficiary should account for income received on the asset distributed. We conclude that, regardless of the theoretical view adopted concerning retroactive operation of overruling decisions, the instant case presents an area where retroactivity should not be afforded. See Langdell v. Dodge, 100 N.H. 118, 122 A.2d 529.

In Great Atlantic & Pacific Tea Co. v. Scanlon, 266 Ky. 785, 100 S.W.2d 223, we appeared to adopt the traditional view so far as retroactivity of decisions was concerned. In Hanks v. McDanell, 307 Ky. 243, 210 S.W.2d 784, 17 A.L.R.2d 1, the traditional view was specifically rejected. Then, it was pointed out in Stewart v. Morris, 313 Ky. 424, 231 S.W.2d 70, that the judgment in the Hanks case was not in

**862**

accord with the opinion. Nevertheless, the Stewart case reaffirmed the same view as to retroactivity enunciated in the Hanks opinion. Bishop v. Bishop, Ky., 343 S.W. 2d 587 aligned this jurisdiction with the modern view. Farmers Bank & Capital Trust Company v. Hulette, Ky., 293 S.W. 2d 458 would appear to signal a fondness for the traditional view concerning the retroactivity of overruling decisions but, nevertheless, recognizes that "this [jurisdiction] has gone as far as any in denying retroactive operation to decisions in cases where justice so requires." The Hulette case extends retroactive effect to the rule in the Bowles case insofar as the question of the date of the will creating the trust is concerned. The Hulette opinion carefully excluded from retroactive treatment corporate distributions effected prior to the 1954 Bowles decision. The corporate distribution involved in the instant case was effected four years prior to the rendition date of the Bowles opinion.

A pragmatic consideration militating against retroactive operation of an overruling decision is the probable impact such result would have upon the administration of justice. In the area involved in the instant case, retroactive application of the overruling decision would cast substantial doubt upon the validity of numerous prior completed transactions in the form of distributions by fiduciaries and treatment by beneficiaries of trusts of assets received as any other income and property of the particular beneficiary concerned. To adopt appellants' approach to the problem would necessitate the possible relitigation of many cases with an ad hoc determination to be made in each on its own particular facts. We reject this approach in the instance involved herein because we believe that, on balance, it is not in the best interest of the proper administration of justice.

The aspect of reliance on the existing law is an extremely important consideration in determining the retroactive effect of overruling cases. Whether we regard the recitation of reliance on existing law by the parties at the time of the distribution in question here as conclusive does not solve the problem. The point is that in the administration of trusts reliance on existing law is inherent and necessary by the very nature of the relationship and the transactions arising therefrom.

And now we have demonstrated a paradox which is that, despite popular notions to the contrary, the modern view of the treatment of precedents sometimes accomplishes more stable conditions as to past transactions than does the so-called traditional or classical approach.

We need not consider the belated contention of the appellees concerning the wording of the particular testamentary trust involved in this case. The trial judge properly declared the rights of the parties.

The judgment is affirmed.

All concur.