### Laurent v. Randolph et al.

December 5, 1947.

J. Wirt Turner, Judge.

W. W. Jesse for appellants.

Bernard B. Davis for appellees.

OPINION OF THE COURT BY JUDGE KNIGHT—Affirming.

Burnett Wallace died testate, a resident of Shelby County, Kentucky, in July 1935. The only parts of his will pertinent to this case are clauses 2 and 4, reading as follows:

"I will that all my estate, both real and personal, including my one-half interest in Hart Wallace & Company, shall be held in trust by the hereinafter named trustee for the use and benefit of my wife, Sunbeam M. Wallace, as long as she lives and at her death for the use and benefit of such of my children as may then be

living, share and share alike during their lives. The children of such of my children as may be dead to take their father's or mother's part in fee simple and absolutely. Each daughter's share shall be owned as her separate estate free from the debts liabilities and control of any husband she may have."

"Upon the death of my children his or her share shall pass to the heirs of his or her body in fee simple and absolutely. Should any of my children die without issue his or her share shall be divided equally among my surviving children for life and issue of such as are dead in fee simple and absolutely, each issue to take a parent's share."

The trustee named in this will was the Bank of Shelbyville which qualified but resigned on January 4, 1937, and Sunbeam M. Wallace, widow of testator, duly qualified as trustee and is now acting as such under proper orders of the Shelby County Court.

Among the assets of the estate of decedent, and the only one involved in this case, was a block of forty-four shares of the capital stock of the Deposit Bank of Shelbyville. The par value of this stock was $100.00, and the original stockholders had put up the additional sum of $20.00 per share to create a surplus fund, so that the capital structure of the bank consisted of shares of the normal value of $120.00 each, made up of the paid in capital and surplus referred to.

The Deposit Bank referred to herein decided to voluntarily liquidate its assets and discontinue the banking business, and in March 1946, pursuant to a vote of its stockholders and directors, the entire assets of the bank were ordered sold for distribution among its stockholders. Included among the stock to participate in this distribution was the forty-four shares held in the Burnett Wallace trust by Sunbeam M. Wallace, trustee, now Sunbeam M. Randolph, by which name she is referred to in this case. In addition to being trustee under the will of her deceased husband she is the life tenant under the terms of that will, as shown by the sections quoted, the remaindermen being her four daughters, one of whom is an infant, and four grandchildren, all of whom are infants. In order to determine the proper distribution of the assets which

came, or will come, into her hands as trustee, and individually, resulting from the bank liquidation above referred to, Mrs. Randolph, as trustee under the will, and in her own right, brings this suit against all the remaindermen under the declaratory judgments act, Section 639a—1 et seq., of the Civil Code of Practice, for proper determination of the rights of all parties. A guardian ad litem was duly appointed for infant defendants and all parties are properly before the court. Proof was taken and on submission of the case the Chancellor adjudged that Sunbeam M. Randolph, as trustee, took as the corpus of the estate the sum of $120.00 per share for the forty-four shares held in the trust, and that Sunbeam M. Randolph, in her own right, is entitled to receive as her individual property, free from any claims of the estate of Burnett Wallace, such portion of the proceeds in liquidation of said Deposit Bank as may exceed $120.00 per share.

To reverse this judgment all the infant remaindermen, by their guardian ad litem, prosecute this appeal from the judgment of the lower court.

### The Law of the Case

The sole question involved in this case is the proper distribution of the extraordinary or liquidating dividend referred to as between the life tenant and the remaindermen.

The question of law involved in this case is one on which there is a wide divergence of opinion among the various jurisdictions in this country, although practically all of them fall into one or the other of three well defined groups. The legal question involved is this: as between the life tenant and the remaindermen, who is entitled to extraordinary dividends, such as stock dividends, extra cash dividends, liquidating dividends, such as we have in this case, and similar distributions other than ordinary current dividends?

The Massachusetts rule, which is in line with the modern English rule, and which is followed by perhaps a majority of the states, awards to the corpus (remaindermen) the entire extraordinary dividend from earnings, if essentially a stock dividend, and to income (life estate) if essentially a cash dividend, without inquiry

in either 'case as to the time covered by the accumulation of earnings which the dividend represents, and without undertaking to apportion the benefit in the event the earnings accrued partly before' and partly after the time when the stock became subject to the life interest.

The Kentucky rule awards extraordinary corporate dividends in their entirety to income (life estate) without regard to whether it is essentially a stock or a cash dividend, or whether it represents earnings that accumulated wholly before or wholly after, or partly before or partly after, the beginning of the life estate, provided the distribution represents an accumulation of earnings and does not result in a reduction of the capital structure. Not many states now follow the Kentucky rule, New York, which formerly followed it, having abandoned it in favor of the Pennsylvania rule.

The Pennsylvania rule occupies a medium position between the extremes of the other two rules mentioned and inquires as to the time covered by the accumulation of earnings embraced by the extraordinary distribution. If earned before the commencement of the life estate it goes to the corpus; if earned after that time then to the life estate as income; if earned partly before and partly after the beginning of the life estate it is apportioned on proper basis between the corpus and the income.

The tendency of modern decisions is toward the Pennsylvania rule as being the more equitable rule of distribution as between the life tenant and remaindermen. Its disadvantage is its complexity and the difficulty of ascertaining the time of accumulation of the distributable sum. The Kentucky rule, on the other hand, has the advantage of simplicity and easy application, even though it may result in an inequitable distribution in particular cases.

The writer of this opinion is inclined to favor the Pennsylvania rule as the fairest and most equitable rule of distribution between the life tenant and remaindermen. However, under the facts of the instant case the life tenant would be entitled to the distribution referred to under any of the three rules outlined above,

and there is no reason for departing from the precedent now accepted as the settled law of this state. See Hite v. Hite, 93 Ky. 257, 20 S. W. 778, 19 L. R. A. 173, 40 Am. St. Rep. 189; Cox v. Gaulbert's Trustee, 148 Ky. 407, 147 S. W. 25; Hubley's Guardian v. Wolfe, 259 Ky. 574, 82 S. W. 2d 830, 101 A. L. R. 1359, and cases therein cited.

## Testator's Intention

In the application of any of the rules above referred to it is conceded that they must yield to an expressed intention of the testator. It is entirely within the power of a Kentucky testator to avoid application of the Kentucky rule by a clear intention expressed in his will and to have a distribution of any extraordinary dividends between the life estate and remaindermen made according to his expressed wishes. These rules of construction must always yield to the intention of the testator as expressed within the four corners of his will. Appellants in their brief contend that testator did show such intention and that by the use of the words "for the use and benefit of my wife" instead of the words "net income" as used in the Hubley case, supra, he evinced an intention that the usual distribution under the Kentucky rule should not apply. With that contention we can not agree since there appears to be no expression in his will, the pertinent sections of which are quoted above, which would justify us in saying that his intention was shown to be contrary to the application of the rule of construction then and now in effect in Kentucky.

## Proof in the Case

Very little proof was taken in the case, but such as was taken indicates that the accumulated earnings which are the basis of the distribution in the instant case, were accumulated after the death of Mr. Wallace and therefore after the beginning of the life estate of his widow. Therefore it would go to the life tenant even under the Pennsylvania rule and under the Massachusetts rule as an earned cash dividend.

The proof shows that the paid up capital of the Deposit Bank on its closing date was $25,000.00; that its surplus account on that date was $21,275.00, and the

140

undivided profits $17,338.87; that at the time of Mr. Wallace's death in 1935, the bank stock was selling for less than $100.00 per share—at from $70.00 to $90.00. The proof shows that so far in the liquidation process there has been paid to each stockholder $225.00 per share and there will be some additional money to be paid on these shares.

While the proof does not show it, we think we may take judicial notice of the fact that during the period from 1929 to the date of Mr. Wallace's death in 1935, most of the banks of this country were in none too good a financial condition, and many were closed, but with the depression over and the war boom prosperity between 1940 and the liquidation period, this bank, like most others, has no doubt made money and accumulated the greater portion of the assets which it is now distributing.

### Conclusion

On the whole case we are of the opinion that the judgment of the Chancellor below was correct and that the case should be and it is hereby affirmed.