## Ball's Ex'r v. Woodford Bank & Trust Co. et al.

November 18, 1949.

S. S. Yantis and Frank S. Ginocchio for appellant.

C. E. Rankin and D. L Thornton for appellees.

CLAY, COMMISSIONER—Affirming.

This is a declaratory judgment action involving the proper disposition of a corporate stock dividend as between the estate of a life tenant and the remaindermen. The Circuit Court adjudged it should be delivered by the Trustee to the remaindermen.

Leon Ball, whose estate is represented by appellant executor, was the beneficiary of a $10,000 bequest left in trust under the will of a relative. The will provided that the "net income" of this trust should be paid to Ball during his lifetime, and at his death the "principal sum" should pass to sisters of the testator. Part of the corpus of this trust consisted of capital stock in the Woodford Bank & Trust Company.

On November 26, 1948, at a bank director's meeting, this resolution was adopted: "subject to the approval of the stockholders, the Woodford Bank & Trust Co. declare a stock dividend paid out of Surplus, giving to each share holder of record on December 10, 1948, one additional share of stock for each share held; * * *."

The resolution further provided that a stockholder's meeting be called on December 10 for the purpose of voting on an amendment to the Articles of Incorporation authorizing the increase in capital stock.

On December 3 Leon Ball died. On December 10 the stockholders met, approved the declaration of the stock dividend, and authorized the amendment to the corporate articles. There is no question that under the Kentucky rule, if the life tenant had been living on December 10, he would have been entitled to the dividend as "income." See Laurent v. Randolph et al.,

306 Ky. 134, 206 S. W. 2d 480. Did his death prior to that time cut off his rights?

I. Appellant's first argument is in substance that the language of the will, bequeathing the "net income" to the life tenant and the "principal sum" to the remaindermen, showed a testamentary intent that all income *realized by the corporation* should go to the life tenant. This proposition is based on the theory that a corporate surplus derived from net earnings, as of a given date (in this instance November 26), ipso facto constitutes *income*. Such a concept ignores the authority of corporate directors to apportion earnings and fix the amount which stockholders may realize on their capital stock. Determinable "income" from corporate stock is not the profits or surplus of the corporation, but the amount thereof, either in cash or its equivalent, *declared payable by the Board of Directors*. See Fletcher, Cyclopedia Corporations, (Perm. ed.) Section 5391. There is nothing in the will before us which would indicate the testator had in mind any other meaning of the term "income," and the term "principal sum" was clearly not restricted to the original corporate stock placed in trust.

II. Appellant next insists that the November 26 resolution was the unequivocal declaration of a dividend to be paid later, and that the rights as between the life tenant and the remaindermen became fixed as of the date of the declaration. We are referred to cases deciding that the owner of stock at the time of a dividend declaration is entitled to it regardless of when it is made payable. Conceding this to be the proper rule, it may be invoked only where the declaration is a complete and final act of the Board of Directors, effectively segregating the corporate earnings for the purpose of paying the dividend, and creating the relationship of debtor and creditor between the corporation and its stockholders. See Lobaco Company v. Chaffin, 193 Ky. 225, 235 S. W. 993.

The resolution of November 26 was not an unequivocal declaration of a dividend. It was simply the initial step taken in a plan to distribute a dividend by increasing the capital stock. The resolution specifically provided that the proposal would be "subject to the

approval of the stockholders." The directors could not lawfully act otherwise in the declaration of this stock dividend, as such action required an increase in the number of shares. To increase the number of shares, it was necessary to amend the Articles of Incorporation. Such could only be done by a two-thirds vote of the shareholders at a meeting called for the specific purpose, as provided in KRS 271.445. It will thus be seen that the declaration of November 26 was conditional, and did not effectively, as of that time, create a legal and enforceable right to the dividend.

III. Appellant's third proposition is simply an extension of the one just discussed. The point is made that the "declaration date" determines who is entitled to the dividend regardless of the "record date" and the "payment date." This question need not be determined in view of our conclusion that November 26 was not the effective "declaration date." We might say in passing that other jurisdictions recognize that where a resolution declares a dividend payable to stockholders as of a certain date, the earnings are not segregated for the benefit of any except those owning the stock on the record date, and the latter would control. See Scott, The Law of Trusts, (1939 Ed.), Volume 2, Section 236.2; Restatement, Trusts, Section 236 (a); 60 A. L. R. 707; 130 A. L. R. 495. Particularly would this be true in the case of a stock dividend which generally requires more than a mere declaration to make it effective. See 12 Am. Jur., Corporations, Section 674.

From what has been said above, it is clear that as of November 26 the life tenant was not entitled to the stock dividend as income, and as of December 10, when the declaration became effective, the life tenant's interest in the trust estate had terminated. The Chancellor correctly determined the rights of the parties.

For the reasons stated, the judgment is affirmed.