**FARMERS BANK & CAPITAL TRUST COMPANY of Frankfort, Kentucky, et al., Appellants,**

v.

**Sue HULETTE et al., Appellees.**

Court of Appeals of Kentucky.

March 23, 1956.

Rehearing Denied Sept. 28, 1956.

Marion Rider and Leslie Morris, Frankfort, for Farmers Bank & Capital Trust Co., etc.

Bernard S. Goldstein, Goldstein & Poynter, Louisville, for Masonic Widows, & Orphans Home and Infirmary.

Allen Prewitt, Frankfort, for Sue Hulette, O. T. Layton, and Alma Layton.

Herbert D. Liebman, Frankfort, for Sue Ann Hulette and Layton Terrill Hulette, minors.

MONTGOMERY, Judge.

In this declaratory judgment action, the controversy concerns the proper allocation, as between life tenants and remaindermen, of a cash distribution in liquidation of a corporation.

In 1938, Sue L. Boggs died testate. She devised and bequeathed the residue of her property in trust in two equal parts. One part was left to her brother and his wife for life, with remainder to the Masonic Widows and Orphans Home. The other part was devised to her niece, Sue Hulette, for life with remainder to her issue if they survived her. The trustee was directed to pay to the life tenants the "entire income" of the trust estate.

Included in the assets of the trust were 217 shares of stock in the Kentucky Concrete Pipe Company. In 1954, this corporation was dissolved, and in liquidation of its assets, the trust will receive approximately $238,000, most of which has already been paid over to the trustee. It is the contention of the life tenants that so much of the amount in liquidation as represents accumulated earnings of the corporation should be paid over to them as income. On the other hand, the remaindermen contend that the amount distributed in liquidation remains in the corpus of the estate. The Chancellor, in effect, adopted the life tenants' view, adjudging that the trustee retain as corpus $200 per share of stock, aggregating $43,400, which was the assessed value for federal estate taxes as of 1938 (being slightly more than the book value of the stock as of that date), and pay over the balance after income taxes to the life tenants.

Our first question is whether or not KRS 386.020(4) governs the disposition of this cash liquidating distribution. That statute provides in part:

"* * * *all dividends* payable otherwise than in the shares of the same class of the corporation itself, *including ordinary and extra-ordinary dividends* and dividends payable in shares or other securities or obligations of corporations other than the declaring corporation, *shall be deemed income.* * * *" (Our emphasis.)

The issue is whether or not this distribution in liquidation constitutes a "dividend" within the meaning of the statute. If it does, then the life tenants get it all. (We may say in fairness to their counsel that they do not insist on such a result but rely upon the statute in a somewhat negative way as denying the courts the right to adjudge that the total cash distribution constitutes corpus.) Up to this point in the opinion, we have consciously refrained from characterizing this distribution as a "liquidating dividend", although it is ofttimes so designated.

In our opinion, particularly in construing a statute relating to "dividends", the amount distributed by a corporation in liquidation of its corporate assets upon dissolution is not a dividend in the true sense. It is such only in the literal sense that it is a proportionate division of the assets of a corporation, but it certainly is not the typical division of corporate profits as such among stockholders. See Polish American Pub. Co. of Detroit v. Wojcik, 280 Mich. 466, 273 N.W. 771. A dividend is thus defined in Petty v. Hagan, 205 Ky. 264, 265 S.W. 787, 789:

"A dividend as applied to the corporate stock of a going concern is always understood as a fund which the corporation sets apart from its profits, or net earnings, to be divided among its members. * * *"

As stated in Sherman v. Pepin Pickling Co., 230 Minn. 87, 41 N.W.2d 571, 575:

"A dividend is a portion of the profits of a corporation declared by the board of directors of the corporation, or other governing body thereof, to be set aside and paid to the stockholders ratably according to their respective interests."

In Lynch v. State Board of Assessment and Review, 228 Iowa 1000, 291 N.W. 161, the Supreme Court of Iowa had squarely presented the question of whether or not the word "dividend" in a taxing statute included a "liquidating dividend". It was held that such a distribution was not a dividend but constituted an exchange of property. In substance, it was held that a dividend constitutes only the distribution of profits or income as such by the corporation.

We are of the opinion that "dividends" referred to in the statute clearly mean those distributions of profits, earnings, or surplus of the corporation which are declared payable by its board of directors as a return on its capital. A distribution in liquidation is neither an ordinary nor an extraordinary dividend within the meaning of the statute.

■ Disregarding the statute, it is the contention of the life tenants that Kentucky law gives the entire cash amount payable in liquidation of a corporation to the life tenant. This was true under our decision in Laurent v. Randolph, 306 Ky. 134, 206 S.W.2d 480. The effective force of that decision, however, was impaired by our decision in Bowles v. Stilley's Ex'r, Ky., 267 S.W.2d 707. In that case, which involved a stock dividend, we departed from the former Kentucky rule which awarded all extraordinary dividends to the life tenant. In doing so, we adopted (with qualifications) what is known as the "Massachusetts Rule".

The pertinent phase of the rule adopted was that which awarded to the remainderman the entire extraordinary dividend from earnings if essentially a stock dividend. It may be pointed out that the statute we have discussed above, KRS 386.020(4), provides that stock dividends payable at a rate of 10% or more of the corporation's outstanding shares of the same class shall be deemed principal of an estate or trust, and the Bowles decision could well have been based on the statute. However, that opinion constituted a reappraisal of the proper distribution of extraordinary dividends as between the life tenant and the remainderman, and this Court did recognize the soundness of the "Massachusetts Rule" by adopting so much of it as declares that a stock distribution, even though reflecting earnings, constitutes capital and goes to the remainderman. Upon re-examination of the differing rules and legal theories, we are of the opinion that such a principle is a sound one and that it logically leads to the same disposition of a liquidating distribution.

The life tenants vigorously attack the "Massachusetts Rule", insofar as it classifies a cash liquidating distribution as corpus, on the grounds that it is inconsistent, arbitrary, and unfair. The claim of inconsistency is that the fundamental "Massachusetts Rule" awards what are essentially cash dividends to the life tenant and, therefore, should include a cash "liquidating dividend". We think we have answered the claim of inconsistency in the earlier part of the opinion when we pointed out that a distribution in liquidation is not in fact a dividend.

We are unable to accept the proposition that the rule is arbitrary and unfair. It is true that it is a convenient one and avoids what could necessitate an almost endless examination into the structure, management, investments, and earnings of a corporation. The life tenants contend that we should adopt the "Pennsylvania Rule", which gives to the remainderman the book value of the stock and awards to the life tenant the earnings of the corporation accumulated after the commencement of the life estate. It is said that this rule is fair and does not involve intricate accounting problems when the corporation is liquidated. In our view, such a rule presents not only difficult accounting problems but many other problems as well. Without going into these, we think the "Massachusetts Rule" is justified on grounds other than those of expediency.

The general tenor of the life tenants' argument is that earnings of the corporation must constitute income under the trust instrument. Such a proposition is not sound, and we pointed this out most specifically in Ball's Ex'r v. Woodford Bank & Trust Co., 311 Ky. 474, 224 S.W.2d 678, 679, wherein we said:

"Determinable 'income' from corporate stock is not the profits or surplus of the corporation, but the amount thereof, either in cash or its equivalent, *declared payable by the Board of Directors.*"

■■ In the present case, the testatrix did not bequeath to the life tenants the earnings of the corporation whose stock was held by the trustee. The trustee was required to pay the income realized from the stock. As just pointed out, that income consisted of those amounts declared payable by the board of directors from the profits and surplus of the corporation. The liquidating distribution is not in this category. It simply constituted a conversion of the corpus from one form to another.

The life tenants argue that there is something morally or legally wrong with permitting the directors of a corporation to determine what earnings shall be paid out by way of dividends and what earnings may be added to surplus or reinvested in other capital assets. We cannot follow this argument. The management of the corporation is a part of the business enterprise in which the testatrix had invested her money. The income from that business enterprise was all that was bequeathed to the life tenants. That income may be determined only by the amounts paid out to the stockholders as their share of the earnings.

Having decided that a distribution in liquidation constitutes (or continues to be) corpus and not income, we are confronted with the life tenants' argument that we are changing the former Kentucky rule, and that Mrs. Boggs' will was written in the light of such former rule which awarded cash distributions in liquidation to the life tenant. Still further, the life tenants point out that prior to the testatrix' death it was the custom of the Kentucky Concrete Pipe Company to distribute most of its earnings as dividends, but that after 1944 it accumulated a substantial surplus from earnings. The argument seems to be that the testatrix' apparent intention was that the life tenants should receive substantially all of the earnings of this corporation whether or not they were declared as dividends.

The answer to this argument is that we can find no intention from the testatrix' will with respect to an apportionment between the life tenants and the remaindermen when one of the corporations in which she owned stock was dissolved. If she had had any such intention, it could have been easily expressed.

It is true that at the time the will was made and at the time of the testatrix' death this Court had followed a rule that cash distributions in liquidation went to the life tenant. This rule was clearly wrong, and we believe the life tenants' counsel in this case recognizes that it was wrong, at least to the extent that it gave all of the liquidating distribution to the life tenant. It must be borne in mind that we are interpreting the rights of parties as of today. Their rights must be governed by what we consider as current sound principles of law. In the absence of any provisions in the will which could lead to a different interpretation, we must presume the testatrix intended any legal difficulties of construction arising under her will to be solved according to the prevailing legal principles applicable to changed conditions.

It is the general principle that the overruling of a former decision is retrospective in operation. 14 Am.Jur., Courts, Section 130, page 345. There are exceptions, particularly where contract or statutory rights are based upon prior decisions. Perhaps this Court has gone as far as any in denying retrospective operation to decisions in cases where justice so required. In Hanks v. McDanell, 307 Ky. 243, 210 S.W.2d 784, 17 A.L.R.2d 1, and Stewart v. Morris, 313 Ky. 424, 231 S.W.2d 70, we purported to give effect to a prior rule of construction of a will even though the former rule had been condemned and a different rule adopted. In those cases, it was held that property rights had vested under earlier decisions with respect to the construction of the typical language used. We do not think this is the type of case to which the concept of prospective operation only should be further extended.

The doctrine of stare decisis, of course, is founded upon the practical necessity for stability in law. However, the law would certainly be blind and its development seriously impaired if former decided cases would prevent the courts from seeking sounder decisions in the light of changing times and concepts. A thorough analysis and constructive criticism of the doctrine by Robert von Moschzisker appears in 37 Harvard Law Review at page 409. It is therein pointed out that where one party claims hardship because an older rule is not followed, the opposing party may likewise claim hardship upon the refusal of the court to apply what it acknowledges to be the better and more just rule. (It also is suggested that when a court lays down

a rule for the future but does not apply it to the controversy under consideration, the court is either legislating or the new rule is mere dicta.)

Assuming the doctrine announced (but not followed) in the Hanks case, 307 Ky. 243, 210 S.W.2d 784, 17 A.L.R.2d 1, to be sound with respect to the particular facts there involved, there is a clear distinction apparent in the present case. In the Hanks case, the particular estate vested at the time of the death of the testator; whereas, in the present case, no one could claim a vested interest in the liquidating distribution of the Kentucky Concrete Pipe Company prior to 1954. Thus, we are confronted with a question of construction of the will which arose only upon the dissolution of the corporation. We are asked to construe the word "income" as it relates to the acts of the corporation in 1954. To say that the lifeless hand of Mrs. Boggs should bind us to a legal concept of "income", as it existed in her lifetime, in other lawsuits is asking too much. The function of courts in seeking justice in the light of changing times and concepts would largely be stultified if the legal effect of words used in a will in one generation should create a vested right in that construction with respect to other wills and other parties. As said in Crigler v. Shepler, 79 Kan. 834, 842, 101 P. 619, 622, 23 L.R.A., N.S., 500:

> "A person who is not a party or privy in the action cannot acquire a vested right in an erroneous decision made therein."

See also Pearson v. Orcutt, 107 Kan. 305, 191 P. 286.

Counsel for the life tenants reflects on the fact that a person may not be able to make a will today with any assurance that his intention will be carried out many years hence in terms of the law existing today. The answer to that suggestion is that the testator need only express his specific intention in clear language. Surely by the use of the broad term "income", he could not fix irrevocably the legal effect of countless business transactions far in the future.

This is made clear as crystal in the present case by reason of the fact that the life tenants' counsel, himself, contends for a rule which is quite at variance with the one in effect at the date of Mrs. Boggs' death.

The life tenants seek justice, as likewise do the remaindermen. We think that the rights of the parties must be determined upon what we consider sound and fair principles governing the character of a corporate distribution of assets in liquidation. As we have pointed out, this distribution is not a dividend and it does not constitute income. It is simply a conversion of the corpus from one form into another. It should be so administered. Former inconsistent cases are expressly overruled.

The judgment is reversed on the appeals and on the cross-appeal, with directions to enter a judgment consistent with this opinion.